

Terminus 200, Suite 2000
3333 Piedmont Road NE
Atlanta, GA 30305
Telephone:  404-870-4600
Fax:  404-872-5547
www.lockelord.com

Michael Wolak III
Direct Telephone:  404-870-4655
michael.wolak@lockelord.com

November 14, 2022

*Via Email* **(gigid@meghomeplus.com)**

Gigi Dalrymple
CEO
MEG HOME PLUS
16491 Scientific Way
Irvine, CA 92618

  Re: **Rythern (Vietnam) International Company Limited**

Dear Ms. Dalrymple:

  Locke Lord represents Rythern (Vietnam) International Company Limited ("Rythern"). As you know, Rythern and MEG Home Plus ("MEG") entered into a Cooperation Agreement on or about March 25, 2022, for the export by Rythern of kitchen cabinets to MEG (the "Cooperation Agreement").  The parties followed up the Cooperation Agreement by entering into a new sales contract on April 1, 2022, for the supply of kitchen cabinetry and related accessories by Rythern to Meg (the "Sales Contract").  The term of the Sales Contract is from April 1, 2022 through December 31, 2022.  Additionally, the Sales Contract requires both parties to "strictly commit to perform the terms and conditions in the contract" and engage in "mutual cooperation and understanding" to resolve any disputes.  (*See* Sales Contract, Article 3).

  As you further know, Rythern supplied MEG with three categories of inventory pursuant to purchase orders: (i) the Houston and California inventories for which MEG was invoiced in the amount of $1.786 million (the "Houston/California Inventory"); (ii) about 8 containers of custom product inventory, model SSW (the "SSW Inventory"); and (iii) purchase orders for 31 containers shipped from Vietnam, including regular orders and supplemental purchase orders to Houston and California (the "Supplemental/Regular Order").  MEG was invoiced for a total of $2.53 million for the SSW Inventory and the Supplemental/Regular Order.  Also, in the spirit of cooperation under the Sales Contract, Rythern prioritized its resources and the custom SSW Inventory order over its other customers, despite MEG's untimely payment for the initial batch of inventory supplied.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

130411624v.1

Gigi Dalrymple | MEG HOME PLUS
November 14, 2022
Page 2

Despite receiving and accepting all shipments, MEG has only paid $100,000 of the total outstanding amount *and* refuses to pay the overdue balance of $4.216 million. MEG is apparently withholding payment on the basis of shipping delays. MEG's position, however, is neither authorized by the contract nor in the spirit of mutual cooperation required by the contract.

*First*, nothing in the plain language of either the Cooperation Agreement or the Sales Contract permits MEG to withhold payment for shipments received and accepted but whose shipment was delayed. *Second*, Article 2 of the Sales Contract regarding "Timely Delivery" merely states that "*Party B [Rythern] will bear any costs related to late delivery of goods.*" Clearly, this provision applies only to *late delivery* of goods. Only the Supplemental/Regular Order was delayed. It is undisputed that there were no delays in shipment of the Houston/California Inventory and the SSW Inventory, rendering MEG's withholding of payment for those deliveries even more egregious. While MEG identified some quality issues with the SSW Inventory, Rythern—consistent with the Sales Contract's spirit of cooperation—offered to replace any defective products and requested that MEG provide a list of defective products by model, number and amount. MEG never provided the requested list and has therefore accepted those goods. Thus, this "costs" provision has no applicability to the Houston/California Inventory and SSW Inventory and cannot be used to avoid overdue payments on those deliveries for which no such "costs related to late delivery" could have been incurred.

Moreover, the undefined term "costs" cannot reasonably be interpreted to include or otherwise contemplate the withholding of payments from Rythern. At best, this language refers to potential "costs" (e.g., expenses) incurred by MEG as a result of the delayed delivery of Rythern products, such as *additional* shipping or freight costs that otherwise would not have been incurred but for the shipping delay. Regardless, nothing in that provision (or in any other provision of the Sales Contract) authorizes MEG to withhold payments for late delivered goods until such time as the "costs related to late delivery" are negotiated and agreed to by the parties and reimbursed by Rythern.

*Third*, it is our understanding that MEG has alleged that its sales were impacted by the delay (e.g., MEG was unable to make sales from April to August and at the same time paid ocean freight and warehouse fees) and requested Rythern to share in the ocean freight costs from April to August 2022. The undefined term "costs," however, cannot reasonably be interpreted to include lost sales or profits. Those are not costs or expenses, but rather are alleged damages for breach of contract. If the parties contemplated the recovery of lost sales or profits as "costs" related to shipping delays, they should have reduced it to writing in the Sales Contract.

Nor is Rythern responsible for market factors beyond its control. Nothing in the Sales Contract requires Rythern to indemnify MEG for any market conditions that result in higher or skyrocketing fees charged by third parties for ocean freight and warehousing. Indeed, Rythern is not responsible for any warehouse and shipping fees incurred from April through June due to any shipping delays because, even without any delay, it still takes approximately 60 days to

130411624v.1

Gigi Dalrymple | MEG HOME PLUS
November 14, 2022
Page 3

manufacture and 30 days for shipping to receive the goods pursuant to the purchase orders. For example, an order placed in March will have a delivery date of May.

*Fourth*, in accordance with Article 3 of the Sales Contract, Rythern notified MEG via WeChat and discussed the anticipated delay in the shipping schedule for the Supplemental/Regular Order. MEG did not raise any objections and accepted all products delivered.

MEG is not acting in the spirit of good faith and the mutual cooperation and understanding required by the Sales Contract. Rather, it is arbitrarily withholding overdue payments on all delivered goods on the basis of late delivery, even though the late delivery was related to *only* the Supplemental/Regular Order *and* nothing in the plain language of the governing contract gives MEG the right to withhold payment for *any* late deliveries. Accordingly, Rythern demands that the outstanding and overdue balance of $4.216 million be paid within seven (7) business days of the date of this letter, and reserves all legal and equitable remedies.

Please feel free to contact me if you have any questions or would like to discuss this matter. We look forward to MEG's cooperation and prompt payment.

Sincerely,

LOCKE LORD LLP

*Michael Wolak*

Michael Wolak III


Cc: Kelly Weng (kellyw@meghomeplus.com)

130411624v.1